# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

KEONDRA M. CHESTANG                                                                                    PLAINTIFF
ADC #134005

v.                                         5:18cv00051-BSM-JJV

RORY GRIFFIN,
Medical Director, ADC; *et al*.                                                                    DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

**I.     INTRODUCTION**

KeOndra M. Chestang ("Plaintiff"), an inmate at the Varner Unit of the Arkansas Department of Correction ("ADC"), filed this action *pro se* pursuant to 42 U.S.C. § 1983. (Doc. No. 2.) He alleged medical indifference in connection with chest pains, as well as making a failure to protect claim. (Doc. Nos. 2, 9.)

Plaintiff's failure to protect claim was dismissed because he did not exhaust his administrative remedies. (Doc. Nos. 117, 125.) Further, of the original thirty-six Defendants, only Plaintiff's claims against Defendants Rory Griffin, Willie Ryas, Joseph Bivens, Phillip Esaw,[1] Brian Shelton, Shamekia Campbell, James Plummer, Kayla Hargrave,[2] and Gene Ables[3] remain pending. (Doc. Nos. 69, 72, 98, 99)

---

[1] The Clerk of the Court is directed to change Defendant Esaw's name on the docket to Phillip Esaw. (Doc. No. 105.)

[2] The Clerk of the Court is directed to change Defendant Hargrave's name on the docket to Kayla Hargrave. (Doc. No. 87.)

[3] The Clerk of the Court is directed to change Defendant Abe's name on the docket to Gene Ables. (Doc. No. 48.)

Defendants Griffin, Ryas, Bivens, Esaw, Shelton, Campbell, and Plummer (collectively, the "ADC Defendants") and Defendants Hargrave and Ables (collectively, the "Medical Defendants") now seek summary judgment. (Doc. Nos. 134-136 and Doc. Nos. 141-143 respectively.) Plaintiff has not responded and this matter is ripe for a decision. After thoroughly reviewing the record, I recommend the ADC Defendants' Motion for Summary Judgment be granted, the Medical Defendants' Motion for Summary Judgment be granted, and that Plaintiff's claims against Defendants be dismissed with prejudice.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a

reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. ANALYSIS

Plaintiff made claims against one or more of the ADC Defendants in Counts 1, 2, 3, 4, 5, 7, and 8 of his Amended Complaint. Plaintiff makes allegations against the Medical Defendants in Counts 2 and 6. Each of Plaintiff's claims fails for the reasons set out below.

#### A. Count 1—Grievance VSM14-04541—and Count 2—Grievance VSM14-04639—Are Not Time Barred

As an initial matter, all Defendants urge that Plaintiff's claims set out in Counts 1 and 2 are time barred, but I find otherwise.

Plaintiff brought suit under 42 U.S.C. § 1983. Section 1983 does not provide a limitations period; the statute is deficient. When a federal law is deficient "the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . ." 42 U.S.C. § 1988. *See also Hughes v. Sheriff of Fall River County Jail*, 814 F.2d 532 (8th Cir. 1987) (state rules applicable where not inconsistent with federal Constitution and laws). In *Wilson v. Garcia*, the United States Supreme Court characterized a § 1983 claim as most similar to a personal injury action and concluded that the statute of limitations for personal injury claims within each state would apply to § 1983 actions accrued in the state. 471 U.S. 261, 275-76 (1985). Claims under § 1983, then, are governed by the statute of limitations for personal injury actions in the state in which the claim accrues. *Sanchez v. United States*, 49 F.3d 1329, 1330 (8th

4

Cir. 1995). *See also Wycoff v. Menke*, 773 F.2d 983 (8th Cir. 1985). "[C]losely related questions of tolling and application" are also governed by state law. *Wilson*, 471 U.S. at 269.

In Arkansas, the statute of limitations for personal injury actions is set out in Ark. Code Ann. § 16-56-105(3), which provides for a three-year limitations period. *See Miller v. Norris,* 247 F.3d 736, 739 (8th Cir. 2001). At the time Plaintiff filed his lawsuit, another Arkansas statute tolled the limitations period for prisoner plaintiffs while they were in the process of exhausting their administrative remedies.[4] Ark. Code Ann. § 6-106-301 (2018). That statute read:

> No action shall be brought with respect to prison conditions under 42 U.S.C. § 1983 or any other federal law, by an incarcerated person, defined for purposes of this subchapter as a person who has been convicted of a crime and is incarcerated for that crime or is being held in custody for trial or sentencing, until such administrative remedies as are available are exhausted, provided, that the statute of limitations is tolled during the period of time the application for the administrative remedies is pending.

Ark. Code Ann. § 16-106-301 (2018).

Plaintiff filed his Complaint on February 16, 2018. (Doc. No. 2). The unlawful conduct he alleged in Counts 1 and 2 occurred on November 27, 2014. The three-year statute of limitations for Counts 1 and 2 ran on November 27, 2017; Plaintiff filed his Complaint more than two months after the statute of limitations expired.

On September 28, 2018, United States District Judge Brian S. Miller allowed Plaintiff's Counts 1 and 2 to proceed because the applicable statute of limitations was tolled pursuant to Ark. Code Ann. § 16-106-301 until the point in time at which Plaintiff had exhausted his administrative remedies. (Doc. Nos. 68, 69). Plaintiff's appeal of Grievances VSM14-04541 and VSM14-04639

---

[4] Under the Prison Litigation Reform Act, a prisoner must exhaust his administrative remedies before filing suit. *Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018) (*citing Woodford v. Ngo*, 548 U.S. 81, 88 (2006) and 42 U.S.C. § 1997e(a)).

was denied on March 15, 2015; Plaintiff exhausted his administrative remedies as of that date. Because pursuant to Arkansas law the applicable statute of limitations had been tolled until March 15, 2015, Judge Miller found that Plaintiff's February 16, 2018 claims were timely. (Doc. No. 69 at 2.)

After the Court's September 28, 2018 Order, Ark. Code Ann. § 16-106-301 was amended to omit tolling. The amendment was slated to go into effect ninety-one days after the close of the 2019 Regular Session, or in July 2019. *See* Ark. Code Ann. § 16-106-301. Defendants now urge that Ark. Code Ann. § 16-106-301, as amended, should apply retroactively, thus barring Plaintiff's Counts 1 and 2. Defendants base their argument on Arkansas law holding that amendments to procedural law are generally given retroactive effect and statutes of limitations are generally considered procedural. (*See* Doc. No. 135 at 3.) While Defendants' argument may be correct, I disagree that § 16-106-301's amendment should be applied retroactively here.

To the extent Arkansas's statute of limitations and tolling laws govern, the Arkansas Supreme Court has recognized "that the General Assembly may reduce the period of limitation even as to an existing cause of action, so long as a reasonable time is allowed between the passage of its act and the time the new act takes effect for the bringing of such actions." *Morton v. Tullren*, 263 Ark. 69, 74 (1989) (*citing Steele v. Gann*, 197 Ark. 480 (1939) (90 days between adjournment of general assembly and effective date of act shortening statute of limitations was reasonable notice period within which plaintiff could have filed suit). Here, the amendment of § 16-106-301 effectively shortened the limitations period for inmates seeking to bring § 1983 claims by eliminating tolling during the exhaustion process.

Plaintiff filed his Complaint on February 16, 2018. (Doc. No. 2.) The amendment at issue was approved in March 2019, effective July 2019. By the time the amendment went into effect,

6

Plaintiff's case had been pending for over a year. The amendment and its notice period was not intended to make untimely claims that had already been brought in court. Rather, the notice period was provided to give potential plaintiffs a chance to bring suit before the shortened limitations period went into effect. Under these circumstances, I find that retroactive application of §16-106-301, as amended, to Plaintiff's claims is inappropriate. Plaintiff's claims set out in Counts 1 and 2 are not time barred, and this result is not inconsistent with federal law.

To the extent the retroactive application of the amendment could be deemed an issue of federal rather than state law, the outcome would be the same considering the facts of this case. *See Landgraf v. USI Film Products*, 511 U.S. 244 (1994); *U.S. v. Craycraft*, 167 F.3d 451 (8th Cir. 1999).

Having determined that Plaintiff's claims are not barred by § 16-106-301, as amended, I turn to the merits of his Counts 1 and 2, along with the remaining allegations against Defendants.

### B. Deliberate Indifference to Serious Medical Needs

Plaintiff maintains Defendants were deliberately indifferent to his serious medical needs. (Doc. No. 9.) The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. U.S. CONST. AMEND. VIII. That prohibition gives rise to the government's duty to provide medical care to prisoners. "The government has an 'obligation to provide medical care for those whom it is punishing by incarceration." *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015) (*citing Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). It follows that the "Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners." *Robinson v. Hager*, 292 F.3d 560, 563 (8th Cir. 2002) (internal citation omitted). "A serious medical need is 'one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Dadd v. Anoka County*, 827 F.3d 749, 755 (8th Cir. 2016) (internal citation omitted). "Deliberate

7

indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). To succeed on a claim of deliberate indifference to a medical need, a plaintiff must show he had an objectively serious medical need and prison officials had actual knowledge of, but deliberately disregarded, that need. *See Washington v. Denney*, 900 F.3d 549, 559 (8th Cir. 2018); *McRaven v. Sanders*, 577 F.3d 974, 981 (8th 2009).

### C. Qualified Immunity

Defendants assert that they are entitled to qualified immunity in connection with Plaintiff's claims against them. "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Stanton v. Sims*, 571 U.S. 3, 5 (2013) (internal citations omitted). Determining whether qualified immunity applies involves two inquiries: whether the plaintiff's allegations make out the violation of a constitutional right and whether that right was clearly established at the time of the alleged unlawful acts. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts may exercise discretion as to which prong is addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "To overcome qualified immunity, a plaintiff must be able to prove that 'every reasonable official would have understood that what he is doing violates' a constitutional right . . . and that the constitutional question was 'beyond debate.'" *Story v. Foote*, 782 F.3d 968, 970 (8th Cir. 2015).

#### 1. Count 1—Grievance VSM14-04541

Count 1 deals with an incident that occurred on November 27, 2014. (Doc. No. 9; Doc. No. 136-1 at 1-10.) Plaintiff described the incident in Grievance VSM14-04541, which reads:

8

> On this date of 11/27/14 I bring complaint against . . . Lt. Bivens for . . . deliberate & negligent indifference denial of medical treatment as about 3:30 p.m. before last chowcall I advised ? of my chest pain & to contact the Nurse as refused stating the nurse is coming anyway. I later told Lundy when he came into the bks moments later, ? stated, ok yet, nobody came to use us, about 2 hours later after injuring my ankle & being unconscious for moments on the cell floor they (including Bivens cam to my door playing games, etc., i.e.)

(Doc. No. 136-1 at 1-5.) In Count 1, Plaintiff alleges Defendant Bivens was deliberately indifferent to his serious medical needs. According to Plaintiff's Amended Complaint, Defendant Bivens was contacted by radio to come to Plaintiff's cell. (Doc. No. 9 at 10.) Plaintiff asserts Defendant Bivens arrived while Plaintiff was unconscious on the floor but stood outside the cell playing games rather than assisting him. (*Id.*)

During Plaintiff's deposition, he testified that another officer notified Defendant Bivens to come to Plaintiff's cell. (Doc. No. 136-2 at 19-20.) Plaintiff is not certain when Defendant Bivens was notified or what the other officer told him. (*Id.*) Plaintiff further testified that he did not inform Defendant Bivens that he was suffering from chest pains. (Doc. No. 136 at 2; Doc. No. 136-2 at 19-20.) According to Plaintiff's testimony, he was conscious and laying on the floor when Defendant Bivens arrived. (Doc. No. 136-2 at 20.) Plaintiff said he recalled hearing Defendant Bivens trying to get his attention, but it sounded "like them playing games . . . ." (*Id.* at 21.) Plaintiff could not remember any further actions by Defendant Bivens; Plaintiff's claim against Bivens was made "because [Bivens] was playing games." (*Id.*) Plaintiff acknowledged, however, that at the time Defendant Bivens arrived Plaintiff was "having a medical issue . . . [and] was dizzy and all that other type of stuff and it's loud out there." (*Id.* at 22.) Plaintiff further explained that he "wasn't in [his] right mind" and he "could have easily mistaken the voice for someone else . . . ." (*Id.* at 14, 22.)

9

It is undisputed that Plaintiff received medical attention on November 27, 2014. As he explained, he "was eventually escorted to the infirmary [and] end[ed] up seeing a Nurse Lee and a Nurse Jones." (Doc. No. 136-2 at 15.) He was taken to the infirmary in a wheelchair to avoid any risk of a fall. (*Id*. at 15-16.) Plaintiff concedes that while at the infirmary he was given an EKG. (Doc. No. 136-2 at 17-18.) As Plaintiff explained, the EKG results indicated that Plaintiff "was okay at that time." (*Id*.) Further, Plaintiff was given 0.1 mg of Clonidine and his dosage of Atenolol was increased. (Doc. No. 136-1 at 6.) He was also prescribed 600 mg of Ibuprofen and given an ice pack. (*Id*.)

Plaintiff complains about the delay he allegedly experienced in receiving medical care. When a prisoner complains of a delay in medical care, he must establish that he suffered some detrimental effect as a result of the delay. *Jackson v. Riebold*, 815 F.3d 1114, 1119-20 (8th Cir. 2016). Here, by Plaintiff's own admission, the EKG performed when he was taken to the infirmary on November 27, 2014 indicated that Plaintiff "was okay . . . ." (Doc. No. 136-2 at 17-18.) And while Plaintiff also complained that he hurt his ankle (Doc. No. 9 at 10), there is likewise no medical evidence that his ankle was hurt. Plaintiff's ankle was examined while he was at the infirmary. (Doc. No. 143-1 at 1.) His ankle was not swollen, and "produced a good range of motion." (*Id*.) He was given over-the-counter pain killers, a splint, and told only to avoid strenuous exercise for five days. (*Id*. at 1-2.) Plaintiff was seen by nurses on segregation visits on November 28 and 29, December 1-8, 10-18, 21-24, 27, and 29-30. (*Id*. at 5-13.) None of the encounter notes reflect that Plaintiff had any problem with or complaint about his ankle. (*Id*.)

### 2. Count 2—Grievance VSM14-04639

Plaintiff's Count 2 involves the same general incident described in Count 1 but involves different actors.

In Count 2, Plaintiff alleges Defendants Ryas and Hargrave were deliberately indifferent to his medical needs, including chest pains. (Doc. No. 9 at 10-11.) Grievance VSM14-04639, the grievance associated with Count 2, reads in legible part:

> On the date of 11/27/14 at approx.. 3:30 p.m. I advised ___ Miles I was having chest pains, sometime following (see security logs & camera) Nurse [Hargrave] . . . made her rounds in the cell block escorted by Sgt. Ryas at which time I advised them both of my issue. Nurse [Hargrave] stated she'd be back & she'd see what she could do. She never returned & ultimately a couple hours later I ended up injuring my ankle & unconscious for moments on my cell floor . . . when I was escorted to infirmary, nurse . . . .

(Doc. No. 136-1 at 7.)

No evidence of record establishes deliberate indifference on the part of Defendant Ryas. As Plaintiff acknowledged at his deposition, he mentioned his chest pain to Defendant Ryas. (Doc. No. 136-2 at 24.) Defendant Ryas then directed Plaintiff to the nurse, whom Ryas was escorting through the cell block. (*Id.*) The nurse then spoke to Plaintiff. (*Id.*) Plaintiff had no further communication with Defendant Ryas. (*Id.*) Defendant Ryas's actions as described by Plaintiff at his deposition do not indicate deliberate indifference, and Plaintiff has not come forward with other evidence establishing that Defendant Ryas ignored Plaintiff's serious medical needs. Plaintiff's claims against Defendant Ryas fail.

Plaintiff's claim against Defendant Hargrave fares no better. Plaintiff asserts he told Defendant Hargrave that he had WPW syndrome[5] and that he was suffering from chest pain, after which she left and did not return. (Doc. No. 143-4 at 2-3.) While waiting in his cell for medical care, Plaintiff asserts he "ended up injuring his ankle and unconscious on his cell floor." (Doc.

---

[5] Wolff-Parkinson-White ("WPW") syndrome is a condition in which an extra electrical pathway between the heart's upper and lower chambers causes a rapid heartbeat. https://www.mayoclinic.org/diseases-conditions/wolff-parkinson-white-syndrome/symptoms-causes/syc-20354626

No. 9 at 11; Doc. No. 143-1 at 4.)  Plaintiff testified at his deposition that around two hours after alerting Defendant Hargrave of his medical issue, he was taken to the infirmary.  (Doc. No. 143-4 at 5.)  He further testified that Defendant Hargrave clearly told someone in the infirmary about what was going on with him.  (*Id*. at 6-7.)

There is no evidence in the record establishing that Plaintiff suffered a detrimental cardiac effect as a result of the delay; the treatment he received at the infirmary and the result of his EKG are set out in Count 1 above, as are the results of the examination of his ankle.

Dr. Jeffrey Stieve is the Regional Medical Director for Wellpath, LLC, the contracted private healthcare provider that offers medical services to the inmates within the Arkansas Department of Correction.  (Doc. No. 143-3 at 1.)  In Dr. Stieve's professional opinion, Plaintiff suffered no harm as a result of the delay in treatment on November 27, 2014.  (*Id*. at 3.)  And Plaintiff has not come forward with any evidence creating a genuine issue of material fact as to the Defendants' alleged deliberate indifference or the detrimental effect of the delay in treatment.  In short, there is no evidence establishing a detrimental effect to Plaintiff's cardiac condition or otherwise.  Summary judgment should be granted in favor of Defendants on the claims set out in Plaintiff's Count 2.

### 3.     Count 3—Grievance VSM15-01177—and Count 4—Grievance VSM15-01182—Defendant Griffin

The only remaining Defendant against whom Plaintiff makes allegations in Counts 3 and 4 is Defendant Griffin, Deputy Director for Health and Correctional Services.  Plaintiff alleges Defendant Griffin failed to provide "quality management" and was deliberately indifferent to his medical needs.  (Doc No. 9 at 11-13.)  Plaintiff filed two grievances against Defendant Griffin in connection with his claims set out in Counts 3 and 4.

The first grievance, Grievance VSM15-01177, provides:

> I received outpatient medical care at the Ark. Heart Hospital in Little Rock, AR about Sept. 12 or 19, 2014 and Dr. Wong ordered me to be placed on a heart monitor for at least 30 days which hasn't taken place. I'm also supposed to be schedule for a review by this Heart Hospital around this time . . . on this date of 3/13/15. I bring complaint against . . . medical director Griffin . . . for indifferences against the above and failure to seek alternatives; corrective inaction, *etc*.

(Doc. No. 136-1 at 14.) Grievance VSM15-01182, the second grievance against Defendant Griffin, reads:

> I hereby bring complaint against . . . medical director Griffin . . . for lack of quality management, failure to provide adequate medical care, i.e.as it's been at or over 6 months since I've been to chronic care before a qualified doctor. I think I appeared before an APN Johnson on 12/21/14 whom said she'd refer me to another person, which I've still yet to see. I demand proper and timely medical care! Etc.

(*Id*. at 18).

Defendant Griffin has served as the Deputy Director for Health and Correctional Services since January 1, 2014. (Doc. No. 136-3 at 1.) His responsibilities as Deputy Director include medical services. (*Id*.) Defendant Griffin does not provide medical treatment and he is not a doctor. (*Id*. at 2.) Rather, he reviews inmate grievances and appeals involving medical issues to determine if an inmate's complaints have merit, among other things. (*Id*. at 1.)

To extent Plaintiff's claims against Defendant Griffin relate to the management of the medical services and care provided by the Arkansas Department of Correction, those claims fail because a supervisor cannot be held liable under the theory of *respondeat superior*. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997). Nonetheless, a supervisor may be held liable under § 1983 if he was personally involved in a constitutional violation or if his corrective inaction amounts to deliberate indifference. *Otey v. Marshall*, 121 F3d 1150, 1155 (8th Cir. 1997). Plaintiff has not alleged that Defendant Griffin was personally involved with any act or omission involving his medical care. Further, the evidence reflects that Plaintiff received medical care in connection with the events about which he

complained in Grievances VSM15-01177 and VSM15-01182. (Doc. No. 136-1 at 11, 15.) Plaintiff may have preferred a different course of treatment, but he has no right to such. *Barr v. Pearson*, 909 F.3d 919, 921 (8th Cir. 2018). And to the extent Plaintiff complains about any delay in treatment, he has not presented evidence that he suffered a detrimental effect as a result of the delay. *Jackson*, 815 F.3d at 1119-20. Accordingly, his claims against Director Griffin fail.

### 4. Count 5—Grievance VSM15-02491—No Evidence of Indifference

The only remaining Defendant in Plaintiff's Count 5 is Defendant Esaw. (Doc. No. 9 at 13.) Plaintiff alleges Defendant Esaw was advised that Plaintiff was having chest pains and blood pressure problems and responded that "he'd send [others] for the plaintiff when they got time." (*Id*.) Plaintiff asserts that "[t]his amounts to . . . deliberate and negligent indifference; delaying and denying medical care." (*Id*.) The corresponding grievance reads:

> On the date of 6/4/15 at the approx. time of 8:05 p.m. Ofc. M. Wright assigned to 2 Baks. Post approached my cell at CB0226 for laundry bag pick up at which I gave her 1st notice of cardiac related chest pains & blood pressure problems. Then at approx. 8:30 p.m. Wright was on 2nd tier picking up laundry at which I gave her 2nd notice to call for medical. At approx.. 9:00 p.m. Wright & Nurse Jackson made routine check & done pill call at which I told the nurse of issue. At approx. 9:30 p.m. Sgts. Ms. Bailey and Mr. Webb finally escorted me to infirmary. All above & Lt. Esaw failed to follow & enforce policies.

(Doc. No. 136-1 at 23.)

Defendant Esaw explains that he was, indeed, notified that Plaintiff was having chest pains. (Doc. No. 136-4 at 1.) After learning of Plaintiff's chest pains, Defendant Esaw requested Sergeants Bailey and Webb to escort Plaintiff to the infirmary. (*Id*.) Plaintiff testified at his deposition that Sergeants Webb and Bailey "[got] him for treatment" and "escorted [him] to the infirmary." (Doc. No. 136-1 at 37, 39.) Once Plaintiff arrived at the infirmary, he acknowledges that an EKG was probably done and that "[t]hey usually go through the process of giving me adequate assessment." (*Id*. at 40.) As a result of Plaintiff's visit to the infirmary that day, Plaintiff

14

was not prescribed any medication that he can recall or given any treatment. (*Id*.) Rather, he was "released [] back to security." (*Id*.)

To the extent Plaintiff alleges Defendant Esaw failed to follow and enforce policy, he fails to state a claim under § 1983. *Gardner v. Howard*, 109 F.3d 247, 430 (8th Cir. 1997); *Williams v. Nix*, 1 F.3d 712, 717 (8th Cir. 1992). Further, Plaintiff has failed to establish that Defendant Esaw knew about his serious medical need but ignored it. When Defendant Esaw became aware of Plaintiff's complaints, Defendant Esaw called others to have Plaintiff escorted to the infirmary—he did not disregard Plaintiff's medical condition. Further, Plaintiff was at the infirmary within one-and-a-half hours and after his examination was released to security without medication or treatment. To the extent there was a delay in treatment, there is no evidence that the delay caused any harm. *Jackson*, 815 F.3d at 1119-20.

### 5. Count 6—Grievance VSM16-02542—No Evidence of Deliberate Indifference

Plaintiff alleges that on July 16, 2016, after a long delay in receiving medical care, Defendant Ables entered his cell and "stuffed ammonia inhalant in Plaintiff's nose to torture him to sit up against the wall for treatment evaluation." (Doc. No. 9 at 14.) He maintains the chemical "burned his nose, throat, and chest, aggravating pre-existing conditions of a known medical emergency for chest pain." (*Id*.) Plaintiff described his complaint in Grievance VSM16002542, which reads:

> On the date of 7/16/16 at approx. 6:00 p.m. after a long delay in receiving medical treatment for an emergency medical situation, nurse [Ables] (spell check) entered my cell and stuffed ammonia, i.e. in my nose to torture me to sit up against the wall for treatment evaluation when I'd already advised her that I was too dizzy to do so along. Although I was dizzy and in pain I was awake and responsive so [Ables] had no real, good faith cause to force me to inhale those "chemicals" which burned my nose, throat, and chest aggravating preexisting conditions of a known medical emergency for chest pains, i.e. As a separate related issue, for more information

15

>also see Grievance # VSM16-02243 in support.  Also maintain area security cameras.  This criminal misconduct must be addressed, civil action will follow!

(Doc. No. 2 at 29.)

Plaintiff was made aware on July 21, 2016 that he was seen by nurse Coleman on July 16, 2016.  (*Id*.)  In support of their Motion for Summary Judgment, the Medical Defendants submitted Defendant Ables's time card for July 16, 2016.  (Doc. No. 143-2.)  The time card reflects that Defendant Ables did not punch in or punch out on July 16, 2016; Defendant Ables did not work on the day in question.  (*Id*.)  Further, there is no evidence in any medical record that Plaintiff complained of having inhaled any chemical or suffered effects of inhaling any chemical.  (*See* Doc. No. 143-1 at 14-17.) (*See also* Doc. No. 136-9.)  At the summary judgment stage, Plaintiff is required to meet proof with proof.  *Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 986-87 (8th Cir. 2016).  Plaintiff has failed his burden.  Beyond his own statements, he has not provided evidence that Defendant Ables was at work that day and he has not provided evidence that he inhaled harmful chemicals.  Plaintiff has not established that Defendant Ables was deliberately indifferent to his medical needs.

### 6. Count 7—Grievance VSM16-02443— No Evidence of Deliberate Indifference

The remaining Defendants in Plaintiff's Count 7 are Defendants Shelton, Bivens, and Ryas. (Doc. No. 9 at 13.)  In his Amended Complaint, Plaintiff alleges that shortly before noon on July 16, 2016, he advised Defendant Shelton that he was having chest pain.  (*Id*. at 14.)  Plaintiff advised Defendant Shelton of his chest pain again at noon.  (*Id*.)  Defendant Shelton then called Defendant Bivens, who allegedly said that "the nurse will only see [Plaintiff] during routine pill call." (*Id*. at 15.)  At around 6:00 p.m. Defendant Bivens and Defendant Ryas went to Plaintiff's cell with nurse

Ables.  (*Id.*)  The duty doctor requested Plaintiff be sent to the emergency room.  (*Id.*)  At approximately 9:00 p.m., Plaintiff was taken to the hospital.  (*Id.*)

The grievance Plaintiff filed in connection with these allegations, Grievance VSM16-02443, provides:

> On this date of 7/16/2019 at approx. 11:30 a.m. I advised Ofc. Mr. Bobby Kennedy I was having chest pains and to contact the nurse as I have hypertension and heart problems. Kennedy failed to contact anyone at this time.  At approx. 11:50 a.m. Ofc. Mr. Shelton relieved Kennedy for lunch break and I advised him of the same medical emergency when he first passed my cell door.  He did nothing.  Then at approx. 12:00 p.m. Shelton passed my cell again and I advised him again and he allegedly called Lt. Bivens.  At 12:50 p.m. Kennedy came to advise me per Lt. Bivens the nurse will only see me during routine pill call.  At about 4:30 p.m. I was in severe pain on cell floor, i.e. Kennedy was advised.  However, it wasn't until about 6:00 p.m. when Lt. Bivens and Sgt. Ryas came to my cell with nurse Abe (spell check) whom stuffed ammonia in my nose to torture me to sit up when I'd already advised her I was to dizzy to do so alone: Sgt. Ryas helped me to sit up against the wall for treatment evaluation.  I was escorted to infirmary about 6:30 p.m. Sgt. Ryas and Bivens [] requested I be sent to outpatient hospital at 7:00 p.m. yet it wasn't until 9:00 p.m. when I left this unit . . . .

(Doc. No. 136-1 at 30.)

Even based on Plaintiff's Amended Complaint and grievance, Defendants Shelton, Bivens, and Ryas responded to Plaintiff's medical needs.  Plaintiff alleges an unconstitutional delay in the timing of his medical care.

Plaintiff received medical care in the infirmary at approximately 6:43 p.m. on July 16, 2016.  (Doc. No. 136-8 at 2; Doc. No. 136-9 at 1.)  The Health Services Encounter reflects that Plaintiff complained of head pain and felt light headed, had numbness in his hands, stabbing pain in his heart, and a pain level of 10/10.  (Doc. No. 136-9 at 2.)  After being evaluated at the infirmary, Plaintiff was taken to the hospital.  He was initially assessed at 9:49 p.m. (*Id.* at 4.)  Hospital records show that Plaintiff was given an EKG, lab tests, and radiology of the chest.  (*Id.* at 3-6.)   Ultimately, Plaintiff was diagnosed with musculoskeletal chest pain, received a

17

prescription for ibuprofen, and was discharged sometime after 11:00 p.m. (*Id*. at 6, 8.) He returned to the infirmary in the early hours of July 17, 2017 where no complaints of pain, discomfort, or shortness of breath were noted. (*Id*. at 9.) Further, Plaintiff was ambulatory, able to make his needs known, and his breathing was even and unlabored. (*Id*.)

Dr. Jeffrey Stieve is the Regional Medical Director for Wellpath, LLC, the contracted private healthcare provider that offers medical services to the inmates within the Arkansas Department of Correction. (Doc. No. 136-8 at 1.) In Dr. Stieve's professional opinion, Plaintiff suffered no harm as a result of the delay in treatment on July 16, 2016. (*Id*. at 4.) And Plaintiff has not come forward with any evidence creating a genuine issue of material fact as to the Defendants' alleged deliberate indifference or the detrimental effect of the delay in treatment. As a result, his claims against Defendants Shelton, Bivens, and Ryas in Count 7 fail.

### 7. Count 8—Grievance VSM17-00050— No Evidence of Deliberate Indifference

Plaintiff contends in Count 8 that Defendants Campbell and Plummer were deliberately indifferent to his serious medical needs based on a two-and-a-half-hour delay in being taken to the infirmary for chest pains. (Doc. No. 9 at 15-16.) Grievance VSM17-00050, the corresponding grievance, provides:

> On 12/27/16 at appx 2:35 a.m. C.O. Cambell assigned to CB5 post was notified by me of my medical emergency of cardiac related chest pains. Cambell called the L.T. Mr. Plummer whom stated there's nothing he could do as everyone's on post. I continued to suffer from chest pains, headaches, slurred vision, and labored breathing for hours until about 4:30 a.m. I laid temporally [sic] unconscious on my cell floor. Cambell radioed for assistance from Plummer. At approx. 5:00 a.m. Sgt. Boltinghouser (spell check) and Sgt. Pittman came to my cell door to escort me to main infirmary for evaluation. The response time for such medical emergency was ridiculous, causing unnecessary pain and suffering and subjecting me to more serious injury. This is furthermore brought against all above named persons for lack of quality management and care, i.e.

(Doc. No. 136-1 at 35.)

Again, even based on Plaintiff's Amended Complaint and grievance, Defendants Campbell and Plummer did not ignore Plaintiff's medical needs. Plaintiff alleges an unconstitutional delay in the timing of his medical care.

The condensed Health Services Encounter from Plaintiff's December 27, 2016 visit to the infirmary reflects that Plaintiff's breathing was even and not labored. (Doc. No. 136-9 at 13.) Further, no shortness of breath was noted. (*Id*.) An ECG revealed normal sinus rhythm. (*Id*.) After Plaintiff's visit to the infirmary, he was released to security. (*Id*.) Dr. Stieve reviewed Plaintiff's medical records and concluded that Plaintiff was not harmed by any delay in treatment. (Doc. No. 136-8 at 3-4.) Again, Plaintiff has not come forward with evidence that creates a genuine issue of fact in connection with the alleged deliberate indifference or harm from any delay in treatment. Again, as a result, Plaintiff's claims against Defendants Campbell and Plummer fail.

In sum, Plaintiff has not produced evidence creating a genuine issue of material fact in connection with his deliberate indifference claims. Defendants are entitled to qualified immunity and summary judgment in their favor is appropriate. The ADC Defendants' Motion and the Medical Defendants' Motion should be granted, and Plaintiff's claims against all Defendants should be dismissed, with prejudice.

## IV.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. The ADC Defendants' Motion for Motion for Summary Judgment (Doc. No. 134) be GRANTED.

2. Plaintiff's claims against Defendants Rory Griffin, Willie Ryas, Joseph Bivens, Phillip Esaw, Brian Shelton, Shamekia Campbell, and James Plummer be DISMIMSSED with prejudice.

3.   The Medical Defendants' Motion for Summary Judgment (Doc. No. 141) be Granted.

4.   Plaintiff's Claims against Defendants Hargrave and Ables be DISMISSED with prejudice.

5.   Plaintiff's Amended Complaint (Doc. No. 9) be DISIMSSED with prejudice.

6.   The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations and accompanying Judgment would not be taken in good faith.

DATED this 16th day of October 2019.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE